IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01208-KAS

T.L.P. [1],

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#10], filed June 11, 2025, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for social security disability insurance pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Plaintiff filed an Opening Brief [#13], Defendant filed a Response Brief [#14], and Plaintiff filed a Reply Brief [#15]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the briefs, the case file, and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Signed Consent/Non-Consent Form* [#9].

## I. Background

On June 1, 2021, Plaintiff filed an application for disability and disability insurance benefits under Title II. Tr. 22.[3] Plaintiff alleged her disability began May 30, 2021. *Id*. Her claim was denied on April 21, 2021, and again upon reconsideration on August 8, 2023. *Id*. Plaintiff filed a request for a hearing before an administrative law judge (ALJ), which was granted, with the hearing taking place on March 6, 2024. *Id.* On May 29, 2024, the ALJ issued an unfavorable decision. *Id.* 22-36.

## II. Social Security Framework

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

---

[3] The Court cites the Transcript of the Administrative Proceedings [#10-2] according to the Court Transcript Index's pagination. The Court cites briefs according to the numbering stamped at the top of each page by the Court's CM/ECF docketing system.

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

**A. The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).

If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work

activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). "If the impairment is severe, the judge must continue to consider the impairment through the third, fourth, and fifth steps. If the claimant has no severe impairments, the judge can end the review at the second step." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. However, "[t]he ALJ's finding of a moderate limitation . . . at step three does not necessarily translate to a work-related functional limitation for the purposes of the [residual functional capacity] assessment." *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quotation and citation omitted).

At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [her] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

In making an assessment, an ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.

1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010).

**B. The ALJ's Determination**

In this case, the ALJ addressed the first four steps of the aforementioned process.

At step one, the ALJ determined that Plaintiff met the Act's insured status requirements through December 31, 2026, and that she did not engage in substantial gainful activity since May 30, 2021, the alleged onset date. Tr. 24.

At step two, the ALJ found that Plaintiff has the following severe impairments: (1) degenerative disc disease, anterolisthesis, and spondylosis of the lumbar spine; (2) degenerative disc disease of the cervical spine with radiculopathy; (3) bunion of the left foot; (4) chronic obstructive pulmonary disease ("COPD") with chronic hypoxic respiratory failure; (5) type II diabetes mellitus with diabetic neuropathy; and (6) obesity. *Id.* at 24. The ALJ also noted that the Plaintiff had been diagnosed with various other nonsevere conditions, and that while those conditions lacked "any associated functional limitations… [he] considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." *Id.* at 25.

In making his determination on these impairments, the ALJ considered the "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." Tr. 25. In the first functional area, "understanding, remembering or applying information," the ALJ reasoned that "the record support[ed] a finding of a mild limitation in this area." *Id.* at 26. In the second functional area, "interacting with others," the ALJ reasoned that the "evidence support[ed] a finding of no limitation in this area." *Id.* In the

third functional area, "concentrating, persisting or maintaining pace," the ALJ reasoned that the "evidence support[ed] a finding of a mild limitation in this area." *Id.* Lastly, in the fourth functional area, "adapting or managing oneself" the ALJ reasoned that the "evidence support[ed] a finding of no limitation in this area." *Id.* The ALJ concluded his determination of the claimant's medically determinable mental impairments by stating that, because, they "cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1))." *Id.* (emphasis in original).

At step three, the ALJ found that Plaintiff's impairments did not, either separately or in combination, meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1526)." *Id.* at 27. Therefore, the ALJ was "unable to find disability based on the medical factors alone." *Id*.

At step four, the ALJ concluded that Plaintiff had the RFC to perform a reduced range of sedentary work, as defined in 20 C.F.R. § 404.1567(a).[4] The ALJ further found that Plaintiff,

> can occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds. She can stand and/or walk 2 hours and sit 6 hours of an 8-hour workday. She can occasionally operate foot controls with the bilateral lower extremities. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She can frequently handle, finger, and feel with the bilateral upper extremities. She requires the use of oxygen via nasal cannula while

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.." 20 C.F.R. § 404.1567(a).

> on the job. She can tolerate occasional exposure to temperature extremes and pulmonary irritants, but she can have no exposure to hazards, including unprotected heights or open flames.

*Id.* at 28. In his assessment regarding the Plaintiff's mental conditions, the ALJ considered the findings of state agency psychological consultant, Andrea Szporn, Ph.D., and state agency psychological consultant, Nadine Genece, Psy.D. *Id.* at 32-33. Based on the RFC assessment, and the testimony of an impartial vocational expert (VE), the ALJ found the Plaintiff capable of performing past relevant work as a hotel manager and order clerk, as actually and generally performed. *Id.* at 35.

Because the ALJ found that Plaintiff was not disabled at step four, he concluded his analysis without proceeding to step five.

On December 31, 2024, the Appeals Council denied Plaintiff's request for review. *Id.* at 6-9. The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

**III. Standard of Review**

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson*, 602 F.3d at 1140. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th

Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Court's determination of whether the ALJ has supported his ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks and modification omitted).

## IV. Analysis

Plaintiff argues that the ALJ erred in two respects.

First, Plaintiff submits that the ALJ's RFC determination and hypothetical question to the VE failed to adequately account for the functional limitations imposed by the Plaintiff's 10-pound portable oxygen tank, rendering the decision unsupported by substantial evidence. *Opening Br.* [#13] at 11-15.

Second, Plaintiff argues that the ALJ failed to account for mild mental limitations in the RFC assessment and in hypothetical questions posed to the VE, constituting reversible error. *Id.* at 16-21.

The Court addresses each contention in turn.

**A. Considerations Regarding Portable Oxygen Tank**

Plaintiff claims that, during the RFC determination and the questioning of the VE, the ALJ failed to properly consider that she is required to carry a 10-pound tank as part of the system which provides her supplemental oxygen. *Id.* at 11-15. She believes that failing to consider the necessity of the tank renders the decision unsupported by substantial evidence and subject to remand.

There is no dispute that Plaintiff requires the use of supplemental oxygen, however Plaintiff states that “both the RFC and the hypothetical question failed to account for the critical fact that a nasal cannula is merely the delivery mechanism—thin plastic tubing that delivers oxygen from a portable tank to the patient's nostrils.” *Id.* at 13. Plaintiff then expands this argument into three intertwined, but distinct pieces: (1) she introduces *Urbina-Escobar v. Covin*, a District of Kansas case in which that court held that “remand was necessary when the ALJ did not discuss plaintiff’s prescribed use of oxygen in the decision,” *Id.* at 12, (2) she claims the ALJ “failed to account for the critical fact that a nasal cannula is merely the delivery mechanism” which “requires a portable oxygen tank weighing ten pounds,” *Id.* at 13, and (3) regarding the hypotheticals posed to the VE, she argues, that “without understanding that the oxygen delivery system includes a substantial portable tank . . . the vocational expert could not provide reliable testimony.” *Id.* at 14. Defendant, in turn, simply argues that the ALJ and VE “plainly understood that Plaintiff required oxygen at work. And the use of oxygen at work plainly requires an oxygen source.” *Response Br.* [#14] at 6. The Court proceeds by addressing each part of the Plaintiff’s arguments on this issue.

### 1. ***Urbina-Escober v. Covin***

A significant portion of Plaintiff's argument relates to her belief that "[t]his case parallels *Urbina-Escobar*, where the court found that an ALJ's failure to adequately discuss and account for oxygen use requires remand." *Opening Br.* [#13] at 14. According to Plaintiff, the Court "held that a remand was necessary when the ALJ did not discuss plaintiff's prescribed use of oxygen in the decision" and that remand would allow "the Commissioner to reassess plaintiff's RFC." *Id.* at 12. The Court, however, is unconvinced that *Urbina-Escobar* parallels this case.

In *Urbina-Escobar*, "the ALJ said *nothing* regarding the fact that Plaintiff was prescribed the use of oxygen." *Urbina-Escobar v. Colvin*, No. 13-1226-JWL, 2014 WL 3734201, at *4 (D. Kan. July 29, 2014) (emphasis added). Therefore, remand was "necessary for the Commissioner to consider Plaintiff's oxygen use, and explain how that fact affects her ability to work." *Id.*

But here, even Plaintiff points out that "the ALJ mentioned oxygen use." *Opening Br.* [#13] at 14. And while Plaintiff attempts to argue that *Urbina-Escobar* is still instructive, she does so by pivoting to tertiary issues regarding the ALJ's contemplation of "the practical functional limitations imposed by the oxygen delivery system's weight and portability requirements." *Id.* at 14-15. Thus, while *Urbina-Escobar* may be a similar case because it also discusses supplemental oxygen, the legal posture is significantly different. *Urbina-Escobar* addressed the *objective fact* that the ALJ there completely failed to mention the claimant's need for supplemental oxygen; but here Plaintiff is contesting an ALJ's *subjective opinion* about "practical functional limitations" imposed by the oxygen tank. *Id.* at 15.

### 2. Whether the ALJ Knew About the Necessity of an Oxygen Tank

Plaintiff contends that the RFC "failed to account for the critical fact that a nasal cannula is merely the delivery mechanism" and "the other end of the tube is connected to an oxygen supply[.]" *Id.* at 13. She thus asserts that "[t]he ALJ's failure to recognize that 'oxygen via nasal cannula' necessarily includes a heavy portable tank renders . . . the RFC determination . . . unreliable and unsupported by substantial evidence." *Id.* at 15.

In essence, Plaintiff believes the ALJ mistakenly failed to consider the ten-pound tank and, as a result, the ALJ failed to "consider all relevant evidence, including [her] medical impairments and their functional impact on her ability to work," including "the practical functional limitations imposed by the [oxygen tank's] weight and portability requirements." *Id.* at 11, 14-15. She claims that this constitutes a "fundamental flaw that undermines the entire disability determination." *Id.* at 13.

In response, Defendant deems Plaintiff's argument "nonsensical" and argues that the ALJ "[obviously] included the use of an oxygen source." *Id.* at 6. Additionally, Defendant narrowly defines the issues before the Court as "whether the correct legal standards were applied, and whether the record contains substantial evidence supporting the findings." *Id.* at 1 (quotations and citations omitted).

For unexplained reasons, Defendant does not identify where in the record the ALJ recognized the oxygen tank's necessity; instead, Defendant asks the Court to simply assume that the ALJ had contemplated it. However, the Court's determination of whether the ALJ has supported his ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent*, 698 F.2d at 412.

In its review of the record, the Court has identified two key places in the record that demonstrate the ALJ's unequivocal awareness of the ten-pound oxygen tank and its

impact on the Plaintiff. First, in connection with his RFC determination, the ALJ noted that the Plaintiff "has difficulty breathing and uses supplemental oxygen all day every day since August 2021" and "[s]he *has a portable oxygen tank that she carries when outside the home which weighs approximately 10 pounds*." Tr. 29 (emphasis added).[5] Second, in the transcript of the March 6, 2024 hearing, Plaintiff went into detail about the oxygen system. Plaintiff stated she uses a portable oxygen tank, described the manners in which she carries it, estimated its weight, described its approximate capacity, and mentioned that she often takes extra tanks with her when leaving home. *Id.* at 61-62. Therefore, while the Court declines Defendant's invitation to assume facts he did not supply, the Court has confirmed that the record contains facts to support Defendant's argument.

**3. Whether the VE Knew about the Necessity of an Oxygen Tank**

The Plaintiff next argues that,

> The ALJ asked the vocational expert to consider someone who "requires the use of oxygen via nasal cannula while on the job" but failed to specify that this requires carrying a 10-pound tank. *Without understanding that the oxygen delivery system includes a substantial portable tank* that consumes the individual's entire occasional lifting capacity, the vocational expert could not provide reliable testimony about available work.

*Opening Br.* [#13] at 14 (emphasis added); *see also Reply Br.* [#15] at 3 ("there is nothing in the record, or questions presented to the VE, that demonstrates the VE knew the weight of the device. To impute such knowledge upon the VE would be pure speculation."). However, once again, the record counters that contention.

---

[5] Plaintiff states there is no evidence in the record that the ALJ recognized the necessity for an oxygen tank. However, in her Reply Brief [#15] she cites Tr. 29, the source of the quote above, where the ALJ described the oxygen tank. This demonstrates an awareness of facts contrary to her present argument. Plaintiff's counsel is admonished and reminded of his obligation not to present a motion containing factual contentions that lack evidentiary support. *See* FED. R. CIV. P. 11(b).

In the transcript of the March 6, 2024 hearing, in which the VE actively participated, the ALJ asked Plaintiff details about her supplemental oxygen tank. Plaintiff replied,

> It's a tank that I either carry on my shoulder or the backpack which both of them are very hard to do because they're very heavy so if I'm using my walker, I could set it in my walker and go about that way.
>
> . . . .
>
> I would say it weighs – it feels to me like it weighs like ten pounds or more which is heavy[.]

Tr. 61.

Thus, while Plaintiff claims that the "hearing transcript contains no questions or testimony establishing . . . [w]hether the vocational expert knew a portable oxygen system weighs 10 pounds," *Reply Brief* [#15] at 2, the record demonstrates the opposite. The VE, through participation in the hearing, knew about the existence and weight of the tank, as well as the way the Plaintiff carries the tank. Like the earlier failure to note that the ALJ was on notice about the ten-pound tank, this excerpt from the record undermines the Plaintiff's argument that the VE's testimony cannot constitute substantial evidence.

Plaintiff also questions the mathematical viability of the RFC's ten-pound lifting limitation: if her oxygen tank weighs ten pounds and she can lift no more than ten pounds, then she cannot engage in lifting activities. *Reply Br.* [#15] at 3. She therefore argues that the VE must have not understood this arithmetic, and thus "could not provide an informed opinion about job availability." *Id; see also Opening Br.* [#13] at 14. For the following reasons, the Court is unpersuaded.

First, as explained, the VE knew about Plaintiff's limitations, the existence of the oxygen tank, its weight, and how Plaintiff carries it. *See* Tr. 61 (statements from Plaintiff

regarding the oxygen tank during a hearing to which the VE was a party), *see generally* Tr. 45-79 (full transcript of March 6, 2024 hearing).

Second, substantial evidence is the relevant evidence which "a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax,* 489 F.3d at 1084. Regarding a VE's testimony, not only can it constitute substantial evidence, but it is a key factor given considerable deference in difficult RFC assessments. *See Biestek v. Berryhill*, 587 U.S. 97, 105 (2019) ("a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data"), *see also Koopman v. Apfel*, 162 F.3d 1173 (Table), 1998 WL 747124, at *2 (10th Cir. Oct. 20, 1998) (when faced with a situation where a claimant fell between two RFC levels, "the ALJ did exactly what he should have done—he turned to a vocational expert"). Thus, to have the Court disregard the VE's testimony on grounds that it is not substantial evidence, Plaintiff must make a strong showing that a reasonable mind would not accept the testimony as adequate to support a conclusion. Plaintiff falls far short. She simply relies on the disproven claim that the VE's opinion rests on a lack of "critical information." *Reply Brief* [#15] at 3. This is not enough.

**B. Consideration of Mental Limitations**

Plaintiff next challenges the ALJ's determination that Plaintiff's mental impairments were nonsevere but with mild limitations in various functional areas. She claims that the "ALJ committed reversible error by failing to account for [her] mild mental limitations in both the RFC assessment and the hypothetical questions posed to the vocational expert." *Opening Br.* [#13] at 19. The Court first addresses the alleged errors in the RFC

assessment and subsequently addresses the alleged errors concerning the questions posed to the VE.

### 1. RFC Determination Process

Plaintiff states that the "ALJ found at step two that [she] had mild limitations in understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. Despite these findings, the ALJ's RFC *assessment* contains no mental limitations whatsoever[.]" *Id.* (emphasis added).

Plaintiff muddies the waters by confusing the RFC itself, and the *assessment* leading up to the RFC.[6] The assessment is the process through which the ALJ determines what limitations go into the final RFC. Thus, by definition, the assessment should not contain limitations; it should include a discussion of whether limitations exist that must make their way into the RFC. That is precisely what occurred in this case. Alternatively, Plaintiff argues that "[m]erely identifying the mental limitations that stem from a claimant's impairments without tailoring the RFC to account for them or offering discussion of their omission is inadequate, and provides grounds for reversal[.]" *Id.* at 17.

[6] Having confused the lack of mental limitation in the RFC with a lack of discussion of mental limitations in the RFC analysis, Plaintiff also cites Tenth Circuit cases where a lack of analysis led to remand. Plaintiff uses those cases to accuse the ALJ of "expressly articulating [his] disregard for controlling 10th Circuit law concerning mild mental limitations." *Opening Br.* [#13] at 20. Plaintiff looks to *Marin v. Colvin* to argue "that an ALJ's failure to account for mild mental limitations in a claimant's RFC alone constituted reversible error." *Opening Br.* [#13] at 20. However, in *Marin v. Colvin*, unlike in the present case, "the ALJ *never* discussed or mentioned Claimant's mental limitations in his step four assessment[.]" *Marin v. Colvin*, No. 14-cv-01331-KMT, 2015 WL 4999955, at *5 (D. Colo. Aug. 24, 2015) (emphasis added). Likewise, Plaintiff cites *Farrill v. Astrue* to argue that the Court cannot sustain an ALJ's decision unless "the ALJ adequately explains the omission of mild mental limitations[.]" *Opening Brief* [#13] at 20. But in *Farrill,* again unlike in the present case, the "ALJ *never* explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations." *Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2013) (emphasis added).

An ALJ must "give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions." *Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). "Although an ALJ must adequately evaluate and discuss the medical-source evidence, [the reviewing court] will find his explanation is sufficient if [it] can follow the adjudicator's reasoning . . . . The more comprehensive the ALJ's explanation, the easier [the reviewing court's] task; but [the court] cannot insist on technical perfection and [it] exercise[s] common sense." *Brooks v. Comm'r, SSA*, No. 22-3005, 2023 WL 2542717, at *3 (10th Cir., 2023) (citations and quotations omitted).

Here, not only did the ALJ identify mental limitations, but he explained why he did not believe those limitations rose to the level of inclusion in the RFC. The ALJ thoroughly discussed the opinions of two state agency psychological consultants.

The ALJ noted that Andrea Szporn, Ph.D., found that Plaintiff had mild limitations with (1) understanding, remembering, or applying information; and with (2) concentrating, persisting, or maintaining pace. Tr. 32. She also found no limitation on (1) interacting with others, or with (2) adapting or managing oneself. *Id*. The ALJ found Dr. Szporn's opinions on all four areas to be consistent with, and supported by, evidence. *Id.* He also found her opinion that Plaintiff's mental conditions are nonsevere persuasive, based on Plaintiff's performance on mini mental status exam testing, among other tests, and based on her daily household activities and her normal attention span and concentration. *Id.*

The ALJ next considered the finding of Nadine Genece, Psy.D., who found that the Plaintiff had mild limitations with (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4)

adapting or managing oneself. *Id.* at 32-33. The ALJ found Dr. Genece's opinion on the Plaintiff's limitations on interacting with others and with adapting or managing oneself unpersuasive because it was inconsistent with evidence that Plaintiff socializes with others three to five times a week and has had appropriate appearance at multiple medical appointments. *Id.* However, he agreed with her other findings and with her general conclusion that the Plaintiff's mental conditions were nonsevere, based on Plaintiff's full affect, normal cognition, speech, judgment, and intact reality testing, as well as her ability to manage funds, drive, shop, and go out by herself. *Id.*

In summary, the ALJ identified which opinions he found consistent with evidence, which findings were supported, and what he found persuasive. Then, as law requires, after considering these opinions, the ALJ afforded them various weights according to the factors set forth in 20 C.F.R. § 404.1527(c), (f), and reached a conclusion as to Plaintiff's mental RFC that was supported by substantial evidence.

The Plaintiff may disagree with the ALJ's analysis and his explanation of how it was used to create an RFC. But in the face of contravening evidence, mere disagreement with the conclusion does not support a claim that the ALJ failed to offer a discussion of why he omitted specific impairments from his RFC. Admittedly, "[t]here is a range of conflicting decisions—in this District and Circuit—regarding the level of detail required when an ALJ engages in his or her RFC analysis." *C.C. v. O'Malley*, 24-cv-00055-MDB, 2025 WL 942992, at *5 (D. Colo. Mar. 26, 2025). However, there is no reversible error when an ALJ provides "sufficient analysis in step two and in his RFC discussion for the Court to follow his reasoning and understand the basis for his conclusion that Plaintiff's [mental limitation] did not justify a lower RFC." *Id*. at *12. Here, that occurred.

Accordingly, the Court finds that the ALJ's RFC analysis took into consideration the opinions of Doctors Szporn and Genece, and that the analysis and explanation was sufficient to demonstrate why the ALJ did not include mental limitations in his final RFC.

**2. Vocational Expert Testimony**

Finally, Plaintiff argues that the "ALJ's failure to incorporate mild mental limitations into the hypothetical questions violates the established requirement that vocational expert testimony can only constitute substantial evidence when based on hypothetical questions that 'relate with precision all of a claimant's impairments.'" *Opening Br.* [#13] at 20, (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)). Here, the Plaintiff's statement of fact is correct. While providing hypothetical scenarios to the VE, at no point did the ALJ incorporate mild mental limitations. Tr. 70-78. However, to the extent that *Hargis* informs the Court's decision on this issue, Plaintiff's reliance on the *Hargis* standard is flawed.

The *Hargis* court stated that "[w]henever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy. A severe mental impairment is such a nonexertional impairment." *Hargis*, 945 F.2d at 1491. *Hargis* discussed the use of vocational testimony at the fifth step to establish the existence of jobs in the national economy—a step the present case never reached and which renders the Plaintiff's argument unpersuasive.[7]

[7] Many of Plaintiff's other citations have a similar flaw, discussing step five failures not applicable here. *See Taylor v. Callahan*, 969 F. Supp. 664, 669 (D. Kan. 1997) (finding that *at step five*, ALJ applied incorrect legal standards in determining that plaintiff could perform other jobs in the national economy); *see also Ricketts v. Apfel,* 16 F.Supp.2d 1280, 1294-1295 (D. Colo 1998) (finding ALJ's *step five* analysis ignored findings of at least two state agency physicians regarding mental infirmity and did not include mental infirmity in the *step five* discussions with a VE).

Additionally, the *Hargis* claimant's severe mental impairment triggered the step five vocational testimony requirement, but in the present case, "[Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas." Tr. 26.

Because Plaintiff's mental impairment is nonsevere, the Court must analyze whether the ALJ properly conducted himself at step four. "[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at step[] four[.]" *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). "[I]n his RFC assessment, the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not." *Suttles v. Colvin*, 543 F. App'x 824, 825 (10th Cir. 2013).

But so long as an ALJ considers the impairment at the RFC analysis stage—which is what happened here—"its omission from the hypothetical to the VE is a proper consequence of the ALJ's determination that it did not have an effect on RFC." *Suttles*, 543 F. App'x at 826. Put otherwise, a step four hypothetical submitted to a VE is acceptable, so long as it contains those limitations the ALJ determined apply to the claimant. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) ("The hypothetical presented to the vocational expert was also sufficient, in that it contained all of the limitations found to exist by the ALJ.) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (deeming limitations adequately reflected in hypotheticals to the VE)).

**IV. Conclusion**

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: September 21, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge